**BRITO et al. v. SLACK.**
No. 2384.

Court of Civil Appeals of Texas. El Paso.
Feb. 20, 1930.

Fuller & Leaverton, of Marfa, for appellants.

Mead & Metcalfe, of Marfa, for appellee.

WALTHALL, J.

Clay Slack, plaintiff below, filed this suit against Monica Heredia de Brito, and other defendants, alleging in substance that he and defendants were joint owners in fee simple of the lands described by metes and bounds, and being that certain tract or parcel of land situated in Presidio county, Tex., "and being the east half of survey No. 346, Abstract No. 6909, Felipe Brito original grantee, the East half containing 80 acres of land, and said East half being described as follows: [Then follows a description of the land by metes and bounds] that plaintiff owns an undivided two-thirds interest in said lands, and defendants, among themselves, own jointly a one-third interest."

This suit is brought for partition of said lands as between plaintiff on one side and the defendants on the other side. All defendants, though some were served by publication, answered by and through their attorneys, all joining in one answer, and were in court at the trial of the case.

Defendants answered by general denial, allege that they own two-thirds of the lands in controversy, and that plaintiff owns one-third. Defendants claim to own their interests as heirs of Cleto Heredia and Lionicea Martinez de Heredia, and a one-twelfth interest as heirs of a deceased brother, Wenseslado Heredia; that Cleto Heredia and Lionicea Martinez de Heredia were the owners of the land in controversy; that both are dead; that Cleto Heredia and Lionicea Heredia had nine children, and defendants represent six of said children; that Cleto died before Lionicea; that defendants Jesus Heredia, and others of defendants, naming them, are the heirs of the children of said Cleto and Lionicea Heredia; that said Wenseslado Heredia is one of the nine children, and is dead, and left defendants as his heirs, together with Senovio Heredia and Victoria Heredia de Velasco; that said Cleto and Lionicea Heredia are the common source of title of both plaintiff and defendants.

Plaintiff claims title under a deed from Lionicea Heredia to Victoria Velasco, Wenseslado Heredia, and Senovio Heredia, three of her nine children, in which deed said Lionicea conveyed to her said three children an undivided one-half interest in the land in controversy.

Defendants attack said deed from said Lionicea to said Victoria, Senovio, and Wen-

seslado on two grounds: First, that the grantor, Lionicea Heredia, did not have sufficient mental capacity to comprehend and understand the deed, its nature and its probable consequence, and allege that, by reason of said want of mental capacity, said deed is void and conveyed no title; then, second, defendants allege in the alternative that, if said deed is not void for want of mental capacity on the part of Lionicea Heredia, then said deed should be set aside by reason of undue influence exercised by grantees over the said grantor. Defendants also attacked the deed from Wenseslado Heredia to appellee on the ground that he did not have sufficient mental capacity to make such deed. Appellee by supplemental petition denied the want of mental capacity of Lionicea Heredia to make said deed, and affirmatively alleged that she had sufficient mental capacity to make said deed, that said deed was made for an adequate, good, and sufficient consideration, and being the deed under which plaintiff held title. Plaintiff also denied a want of mental capacity in Wenseslado Heredia, and affirmatively alleged sufficient mental capacity as to him to make said deed to plaintiff.

Plaintiff further alleged that, if said deed from Lionicea Heredia to said Victoria Velasco, Wenseslado, and Senovio Heredia was subject to any of the defenses alleged by defendants, same was voidable only, and subject to ratification, and that the grantor had ratified same and at such times when she was fully possessed of her mental faculties, and not subject to any temporary disability.

Plaintiff specially pleaded the four-year statute of limitations; alleged that defendants were aware of the execution and delivery of said deed at the time, were now estopped after a lapse of twelve years from denying its validity, and that defendants' demand, if any they had, was a stale demand. Plaintiff further alleged that he is a bona fide holder for a valuable consideration under the said two deeds sought to be canceled by defendants of an undivided two-thirds interest in said lands.

Defendants answered plaintiff's supplemental petition by general denial and otherwise traversing the facts there pleaded; prayed for judgment for cancellation and removal of all clouds from title for partition, etc.

The case was tried to a jury and submitted upon two issues, as follows:

(1) "Did Lionicea Heredia, the grantor in the deed introduced in evidence before you, dated December 31, 1917, at such time, have such mental capacity to understand the nature and consequences of said deed? Answer yes or no."

(2) "Did Wenseslado Heredia, one of the grantors in the deed dated February 20, 1929, introduced in evidence before you at the time he executed the same, have sufficient mental capacity to understand the nature and consequences of said deed? Answer yes or no."

The jury answered "Yes" to each of said questions.

On the verdict rendered, the court entered a decree awarding to plaintiff, Clay Slack, two-thirds of said land, and to defendants one-third of said land, and specifying in said decree the interest each of the defendants had in the one-third awarded to them; the court decreed that defendants take nothing by their cross-action for cancellation of said two deeds.

The court, before entering the decree of partition, determined that said lands were susceptible of an equitable partition, and, the plaintiff and defendants having asked for a partition of the interests of each in the proportions stated, the court directed a partition between plaintiff and defendants in the proportions of two-thirds to plaintiff and one-third to defendants.

The court in the decree appointed three commissioners, naming them, to make a fair, equal, just, and impartial partition of said lands in the shares stated, and report same to the court, under oath, to the January term, 1930; and assessed the costs to each in proportion to the several proportions awarded to each.

The court overruled defendants' amended motion for a new trial, to which defendants duly excepted and gave notice, and have perfected this appeal.

### Opinion.

In 1891, Survey No. 346, containing 160 acres of land, the land in controversy, was patented to Felipe Brito, his heirs and assigns.

In November, 1907, Felipe Brito and his wife, for a consideration recited in the deed of $27.50, conveyed 80 acres by warranty deed, the east half of said survey 346, to Cleto Heredia, describing the land conveyed by metes and bounds.

Cleto Heredia died: On December 31, 1917, Lionicea Martinez Heredia, for a consideration of $10 recited in the deed, and as paid, conveyed by warranty deed to Victoria Heredia Velasco, Wenseslado Heredia, and Senovia Heredia "my one-half undivided interest in and to survey No. 346, abstract No. 6908, Felipe Brito, Grantee, containing 80 acres. To Have and To Hold the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said Victoria Velasco, Wenseslado Heredia and Senovia Heredia —— heirs and assigns forever," etc (omitting the pronoun preceding the words "heirs").

On the 20th day of February, 1929, Wenseslado Heredia, Senovia Heredia and Victoria Heredia Velasco, the latter joined by her husband, Apolonio Velasco, by warranty

deed, reciting a consideration of $1,800 paid by Clay Slack, conveyed to Clay Slack "all that certain tract or parcel of land situated in Presidio County, State of Texas, and being all of our undivided two-thirds interest in and to the East half of survey No. 346, abstract No. 6908, Felipe Brito original grantee, the east half containing 80 acres of land, and the east half being described as follows: [Describing same by metes and bounds]"; the deed then reciting: "It is the purpose of this deed to convey all our undivided interest in said survey 346, patented to Felipe Brito, as heirs of Cleto Heredia, our father, and of Lionicea Martinez Heredia, our mother, as well as all the interest in said survey conveyed to us by deed from our mother dated Dec. 31, 1917," stating the page record, and concluding with the habendum clause usually found in warranty deeds. The deed shows proper acknowledgment and recording.

The above instruments constitute the chain through which plaintiff, Clay Slack, claims title to two-thirds of the lands in controversy.

Appellants submit that: "A deed from the wife purporting to convey the separate property of her husband, who died intestate, conveys only the wife's life estate."

The proposition may state a correct proposition of law, but there is nothing in the verbiage of the deed that purports to convey the separate property of the husband, or any intimation that the property is the separate property of the husband. The reference is to the deed from Felipe Brito and wife to Cleto Heredia, the husband of Lionicea Heredia. The deed does not recite that it is a gift, uses no words indicating a gift, but does use words of bargain and sale, and recites a valuable consideration paid ($27.50).

■ The word "gift" has often been defined but invariably as a voluntary transfer without consideration or compensation therefor. C. J. 28, p. 620 et seq. The form of the transfer, however, is not necessarily conclusive. True, Felipe Brito testified that the deed from him to Cleto was a gift, and that no consideration was paid.

■■ The question as to whether a transaction is a gift or a sale is a matter that may be inquired into on the trial, and is determined by the intention of the one conveying, the intention to be gathered from all the facts and circumstances attending the transfer of the property. The instrument conveying the property cannot be construed, as a matter of law, as a gift where it expresses upon its face a grant made for a valuable consideration, or where such consideration may be inferred. It seems to us that the evidence does not establish as a matter of law that the grant was a gift, as submitted by appellants. The question of the intention of the grantor at the time of the grant or at any time may be inquired into. If the evidence was sufficient, prima facie, to suggest a gift by Felipe Brito to Cleto Heredia, as distinguished from a sale, it created only an issue of fact to be determined on the trial. The question of gift or sale was not submitted to the jury, nor requested to be submitted, and we must conclude that the court determined the issue in appellee's favor by the judgment rendered.

■■ There is no merit, we think, in appellant's contention that the deed from Lionicea Heredia to Victoria Velasco, Wenseslado and Senovia Heredia, shows such ambiguity and uncertainty as not to be sufficient to prove title in the grantees of her interest, by the omission of the pronoun immediately before the word "heirs" in the habendum clause of the deed. Without words in the deed to show that heirs or assigns other than the heirs and assigns named in the deed were intended, or that another person was intended by the grantor "to have and to hold" the property conveyed, it would necessarily follow, in the absence of proof to the contrary, that it would be the heirs or assignees of the grantees named were intended. There is nothing in the deed to indicate that the intention of the grantor was that the grantees were to have and to hold the property otherwise than for themselves, their heirs and assigns. Under such circumstances, the deed must be given a fair and reasonable meaning to harmonize with the circumstances under which the deed was given.

Appellants insist that a parol partition of the land in controversy had been had, and assign error in rendering judgment in favor of appellee, because, as asserted, the undisputed evidence shows such parol partition, "and that plaintiff (evidently meaning appellants), if entitled to any land, was entitled to two-thirds of all the land involved." Appellants submit that the judgment should be in accordance with the undisputed evidence.

■■ Appellants did not plead a previous parol partition. But, without discussing the necessity of pleading such partition, does the evidence show such parol partition? The evidence shows an attempt to effect a parol partition. The object of a partition proceeding is to put an end to the tenancy so as to vest in each cotenant a sole estate in a specific portion of the land, and to avoid the inconveniences which result from a joint or common possession, and to enable each cotenant to possess, enjoy, and improve his share in severalty. The cotenant's right to partition depends upon his present right of entry and possession as against other joint tenants.

■ Appellants contend that the extent of the right or ownership of their mother, Lionicea Heredia, to the land was limited to a life estate in the entire acreage involved. Conceding that to be true for the

purpose of discussing their right to a parol partition during her life, and she was alive at the time of the attempted parol partition, and living upon the land, did appellants have such present interest and right of possession as against her? Without her consent or joining in the parol partition, we think appellant may not have such partition. Our Statute, article 6082, permits joint owners or claimants of real estate, whether held in fee, by lease or otherwise, to compel a partition between other joint owners. Lionicea Heredia, the widow of Cleto Heredia, is, however, not a cotenant with the heirs and they could not maintain a suit against her to compel a partition. 20 R. C. L. 749. It might be, however, that a parol partition, with her consent, might he had. The evidence shows that the attempt to the parol partition was to divide the land into nine parts among the nine children of Cleto and Lionicea Heredia. The evidence does not show that Lionicea Heredia was present or was consulted or in any way gave or withheld her consent. She seems not to have been a party to the division of the land among the heirs. However that may be, the undisputed evidence shows that not all of the nine heirs or claimants to the land were present at the time the division of the land was made. The evidence shows that of those present "they were all satisfied and then afterwards they made the papers and they fell out and some of them signed and some of them didn't sign. * * * They fell out about it. * * * It came up at that time that Wenseslado, Senovio and Apolonio's wife (Victoria Velasco, one of the nine children of Cleto and Leonicea Heredia) were claiming under a deed from their mother to more than ⅑th of the land that day when we went to divide up. That came up the day that we divided the land. Apolonio brought out a paper that was in the house. * * * Apolonio told me and Felipe and said that those three (Wenseslado, Senovio and Apolonio's wife) were claiming more than ⅑th each under a deed from their mother (Lionicea Heredia). That was before the division but the day we were down there for the purpose of making a division." The court was not in error in not conforming the judgment to the asserted parol partition; nor in refusing to admit in evidence the parol partition instrument.

R. C. L. 20, p. 749; Wilson v. Beck (Tex. Civ. App.) 286 S. W. 315, in which Judge Looney of the Dallas court holds that an expectancy, such as the immediate grantees of appellee owned in part, is a proper subject of contract and sale.

Appellants submit error in the failure of the court to charge on the issue pleaded of undue influence in securing the deed from Lionicea Heredia to her three children, the immediate grantors of appellee.

We have carefully reviewed the evidence relied upon by appellants to show undue influence in executing the deed. It would serve no useful purpose to reproduce it here. There is not the slightest suggestion, in our opinion, of any direct undue influence. The court submitted the question of her mental condition. Witness P. D. Anderson, who wrote the deed from Lionicea Heredia to her three children, testified that he had lived near, had occasion to observe her; she asked witness to write the deed; he talked to her at the time; she said she wanted to make the deed; she had with her another deed from which witness got the description; she told witness at that time that the other children had gotten "a lot of other property, some live stock," etc. There evidently, from the evidence, was some weakness of mind, but the evidence does not suggest any imposition, fraud, or the exercise of undue influence by any one. The evidence shows no persuasion on the part of any one to make the deed. C. J. vol. 9, p. 1177, par. 38; Black on Rescission and Cancellation, vol. 1, § 237; Id. §§ 242, 247, and 252.

The evidence does not, we think, show such circumstances as to suggest undue influence in making the deed in question, nothing to suggest that the free agency of the grantor was in any wise destroyed, or that the grantees exercised any influence over their mother in making the deed.

We need not discuss the many cases to which we are referred, in the absence of any evidence showing persuasion or any importunity or act of any one, or any circumstance showing or tending to show influence exerted to write the deed. Stewart v. Miller (Tex. Civ. App.) 271 S. W. 311, 316, in which many cases are collected by Judge Gallagher of the Waco court, to which cases we refer; Shelton v. Shelton (Tex. Civ. App.) 281 S. W. 331, 332, is in point.

The deed does not suggest to us that it is an unnatural deed, especially in view of the evidence of the witness Anderson as to the reason given by the grantor for making the deed. The excluded answer to the question: "Did Felipe provide Lionicea with food and clothing?" and to which the witness would have answered that he did, does not present reversible error, being only, if any, a slight circumstance on undue influence.

The court did not submit any issue of limitations, nor was there a request for such issue, and evidence directed to such issues would have no reference to any issue in the case.

A bill of exceptions complaining of the exclusion of evidence which does not show what the evidence would have been cannot be considered.

Witness Anderson, over objection that it was hearsay, was permitted to testify: "I

talked to Cleto about the West ½ of 346, and he told me that his son-in-law had taken up the section from the state and that he had allowed him to keep ½ of it."

The evidence was a part of a conversation of the same witness brought out on cross-examination by appellants. Also the rule seems to be that as to deceased owners, as here, relative admissions as to matters of fact concerning his title or interest made by a deceased owner of real estate are competent against his heirs at law or devisees in any proceedings in which these rely on his title. 22 C. J. pp. 359 and 418 and 419, and cases there cited. A similar question is discussed by Judge Barcus in Sabinal Nat. Bank v. Cunningham (Tex. Civ. App.) 256 S. W. 317. The above rule seems to be well established in this state.

■ The court was not in error in excluding an answer of a witness to the question: "Did you ever know Wenseslado to take a job and stay on it and work at it?" in testing his mental capacity to execute the deed to appellee. As suggested by appellee, the question and any answer the witness could properly give to the question call for too many varying and different elements to sum up his conclusion, etc. The cases referred to by appellants do not sustain their contention. We will refer to them more specifically later.

■ Santiago Hinojos, a witness for appellants, was asked the question: "Was Lionicea capable of transacting business in ordinary affairs?" The court refused to permit the witness to answer the question. The question, to be permissible and the answer thereto, should be directed to the time the deed to her children was executed.

The witness had stated the following in substance: He had known Cleto and Lionicea for many years; Cleto died first, some 18 or 19 years ago; his association with Lionicea since the death of Cleto has been to the extent of exchanging salutations with her; had seen her and talked with her frequently; she lived at Felipe Breto's house since she became a widow; she was a little crazy; the household would have to watch after her, look after her all the time; she could not carry on an intelligent conversation; she was in that condition practically all the time witness had known her; sometimes she was worse than at other times; in 1917 she was very bad; before her husband's (Cleto's) death she would be better at times and at times worse; after his death she became worse; at times she was better, but never entirely well; she was a very old lady.

The statements of the witness as to his qualification as above cover a period of many years, and the question as framed does not confine the answer to any period of time.

The test of the mental capacity to do an act must be of the time the act is done.

After the witness had qualified, if he had, the inquiry, if permitted at all as to the mental capacity to make a deed, as to the mental disqualification, as in a hypothetical question, should be directed to the time the deed was executed, otherwise the jury would not understand that the disqualification must be at that time. We think also that the question as to the capacity of transacting business in "ordinary affairs" is too general, and is not the disqualification alleged. Lionicea might not have the capacity to conduct business affairs in which she had had no experience or training, and yet she might know the effect of executing a conveyance of her interest in the land.

But, aside from what is said above, as the question there might have been reframed, and thus avoided the objections to the form of the question, the controlling question that goes to the very foundation of the issue presented is whether it is competent for a witness, whether expert or nonexpert, testifying to mental capacity, to state his opinion of the legal capacity of the maker of a deed to make such deed? In the case of Brown v. Mitchell, 88 Tex. 350, 31 S. W. 621, 629, 36 L. R. A. 64, the Supreme Court, speaking through Judge Brown, after discussing a number of cases, says that "no witness will be permitted to testify to a legal conclusion from facts given, either by himself or testified to by another. It is the province of the jury, from the testimony, to find the facts." The case has since been followed and become the settled rule of evidence in this state.

To the same effect is the case of Koppe v. Koppe, 57 Tex. Civ. App. 204, 122 S. W. 68, 74, referred to by appellants, in which Judge Pleasants, referring to Brown v. Mitchell, supra, and Houston & T. C. R. Co. v. Roberts, 101 Tex. 418, 108 S. W. 808, said:

"In the two cases * * * the distinction is shown between the opinion of a witness involving a conclusion of law and one which is only a fact conclusion, and it is held that it is not competent for a witness to give his opinion when such opinion involves a legal conclusion, such as the capacity to make a will or a contract," such being a mixed question of law and fact.

The question involved here is undoubtedly of the same character. The witness was testifying to the mental capacity of Lionicea Heredia, and the question, in effect, called for the opinion of the witness as to her mental capacity to make the deed shown in evidence. The court was not in error in excluding the answer.

Propositions not discussed have been considered and overruled.

The case is affirmed.