ZEPHIE MOODY TITTLE V. L. A. TITTLE.

No. A-2063. Decided April 27, 1949.
Rehearing overruled June 8, 1949.
(220 S. W., 2d Series, 637.)

*Ramey & Ramey, Sellers & Fanning,* all of Sulphur Springs, for appellant.

*Howard S. Smith* and *John A. Hicks,* both of Sulphur Springs, for appellee.

MR. JUSTICE SMEDLEY delivered the opinion of the Court.

The Court of Civil Appeals has certified for decision two questions of law arising in appellant's suit against appellee for divorce and the adjudication of property rights. The first question is as to the validity and effect of a deed executed by appellee L. A. Tittle, the husband, purporting to convey to L. A. Tittle and appellant, Zephie Tittle, the wife, 342.5 acres of land in Franklin County. The certificate thus sets out the material facts and pleadings in so far as they relate to the deed and the 342.5 acres of land:

"Prior to their marriage on November 15, 1945, Mrs. Tittle owned as her separate estate a 185 acre farm, a small herd of cattle and certain other personal property, and likewise Mr. Tittle owned as his separate estate a 342.5 acre farm, a small herd of cattle and certain other personal property. In January following their marriage they agreed between themselves that all the separate estate of L. A. Tittle would become community property and the cattle and car then owned by her would become community; and all profits thereafter accumulated from any source likewise would become community.

"This agreement later reduced to writing, dated, signed and acknowledged by them on January 5, 1946, reads:

"KNOW ALL MEN BY THESE PRESENTS:

" 'That this is an agreement and contract entered into on this date between L. A. Tittle and Zephie Tittle as husband and wife.

" 'To further combine our individual property into community property, we made the following agreement:

" '(1) L. A. Tittle is to make deed to L. A. and Zephie Tittle to all real estate owned by him individually, and all personal assets, including bank account, as cash shall be considered as

of this date to be community property and subject to our needs as husband and wife.

" '(2) As of this date Zephie Tittle agrees to turn over to L. A. Tittle and herself as community property the Ford automobile owned by her, and also all the cattle now owned by her individually, and such other personal assets that she may deem expedient to do. Zephie Tittle, by agreement, is to retain title to her real estate until such time as she may decide to handle it in a different way. However, as the expenses of this land will be cared for by both of us, any revenue derived from such land will become the assets of both of us and used as such.

" '(3) It is also agreed by both of us that should we cease to live together as husband and wife, within five years from this date, as far as is possible we would return to each one his or her individual property. In that case Zephie Tittle would return to L. A. Tittle deeds, or proceeds of said real estate which was personally owned by him. Also L. A. Tittle would return to Zephie Tittle cash value of all personal property originally owned by her.

" 'It is also agreed that any profits accumulated from this date regardless of source, will be treated as partnership, and on a 50-50 basis. It is also agreed that since L. A. Tittle owes his father, W. H. Tittle, the sum of $3,000.00 and this debt is assumed by both of us; that should property be returned to each individually, L. A. Tittle agrees to assume any remaining indebtedness of this and also to pay Zephie Tittle her part of any money paid on this indebtedness from our partnership.'

"On January 8, 1946, L. A. Tittle signed and acknowledged a deed of conveyance, the portion pertinent to the question of law here involved, reads:

" 'KNOW ALL MEN BY THESE PRESENTS:

" 'That I, L. A. Tittle of the County of Franklin, State of Texas, for and in consideration of the sum of One and no/100 ($1.00) Dollars, to me paid Zephie Tittle as follows:

"'$1.00 cash in hand paid receipt of which is hereby acknowledged, and the further consideration for the purpose of converting the hereinafter described land as community property to be owned jointly by the said L. A. Tittle and the said Zephie Tittle, husband and wife, have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said L. A. Tittle and Zephie Tittle of the County of Franklin, State of Texas, all that certain tract or parcel of land situated in the

County of Franklin, State of Texas, (here follows description of the 342.5 acre tract).

" 'To have and to hold the above described premises, together with all and singular, the rights and appurtenances thereto in anywise belonging unto the said L. A. Tittle and Zephie Tittle, their heirs and assigns forever; and we do hereby bind ourselves, our heirs, executors and administrators, to warrant and forever defend all and singular the said premises unto the said L. A. Tittle and Zephie Tittle, their heirs and assigns, against every person whomsoever lawfully claiming, or to claim the same or any part thereof.'

"In her suit for divorce which was filed on February 4, 1948, well within the five year provision contained in paragraph three of above agreement, she plead that she was the owner as her separate estate of certain properties, and amongst the properties she alleged to be the community estate of herself and husband L. A. Tittle, she included the 342.5 acre tract, describing it as 'being the same land described in the deed from L. A. Tittle to L. A. Tittle and Zephie Tittle, dated January 8, 1946, of record in Vol. 63, page 419, Franklin County deed records.' She alleged this 342.5 acres became community property by reason of above deed, and if it should be construed not to be community property under the law, that then she owned an undivided one-half interest in this tract. In an alternate count, she plead the agreement that had been executed by them, alleged that he executed the deed in pursuance of the agreement, and acting upon the strength of both she advanced out of her separate estate to the community certain properties which she itemized. By reason of these alleged advances, she sought an equitable lien on the community in the event the deed should be declared invalid.

"Briefly stated, defendant alleged the 342.5 acres to be his separate estate, prior to the marriage and at all times subsequent; alleged that by virtue of paragraph three of the agreement and the acts of defendant the agreement had been breached and now unenforceable; that the sole consideration and purpose of his execution of the deed was in the effort to convert his separate estate into community; and both instruments were invalid, void and unenforceable; and by reference to the exhibits attached to plaintiff's pleadings, made both instruments a part of the answer. Defendant sought removal of cloud of title on the 342.5 acre tract, cast thereon by reason of the execution and recordation of the instruments. No fraud, accident or mistake was plead by either litigant in the execution of the instrument, and was not raised by any evidence. The deed was executed

solely in consideration of and pursuant to the written agreement. Plaintiff introduced in evidence both instruments."

The first of the two certified questions is:

"Under the pleadings and evidence above set out, did the trial court err in decreeing the deed hereinabove set out to be 'void and of no force and effect whatsoever' by virtue of the holding in Kellett v. Trice, 95 Texas 160, 66 S. W. 51?"

As indicated by the statement of the pleadings, the position taken by appellee is that the contract and the deed are void and of no effect because they merely evidence an effort on the part of the husband and wife by agreement to convert separate property into community property; while appellant contends that by reason of the deed the 342.5 acres of land became community property, and that the deed, if ineffective to accomplish that, conveyed to her an undivided one-half interest in the land.

■ We have reached the conclusion that the Court of Civil Appeals in its tentative opinion and the trial court in its judgment correctly decided that the question as to the validity and effect of the deed is determined by Kellett v. Trice, 95 Texas 160, 66 S. W. 51. There is striking similarity in the facts and the instruments involved in that case and those in this case. In our opinion, the rules and principles announced in that case, when applied to the facts set out in the certificate herein and the instruments executed by the parties, compel the conclusion that the transaction did not change from separate to community the property described in the deed, and that the deed did not convey to the wife an interest in the land.

In the Kellett case the husband and wife joined in the execution of a deed conveying and transferring to a trustee several parcels of land and 130 shares of stock owned by the wife as her separate property, and also 108 shares of stock which were community property. The deed recited as its consideration and purpose "one dollar from each to the other paid, and for the purpose of divesting the separate estate and title of us and each of us in and to the property (hereinafter described) in which each of us shall hereafter own, hold, have and enjoy an equal undivided community interest, to the end that all of the same may stand and be as all other property now owned by us, viz., community property, regardless of in whose name the title thereto may stand, * * * and all increase, profit and income of every kind whatsoever from said property hereinafter described shall be and become after this date community property under

the laws of the State of Texas, * * *." The habendum clause recited that the conveyance was to the trustee "for the purpose of conveying the same to the said W. M. Kellett as the community property of the said W. M. Kellett and Callie R. Kellett."

On the following day the trustee executed a deed conveying and transferring the same property to Wm. M. Kellett, the husband, for a recited consideration of $10.00 "and for the purpose of carrying into effect the object and purpose of the conveyance to me by said Wm. M. Kelletta nd his wife, Callie R. Kellett", with recitals following the description that the property "shall be the community property of said Wm. M. Kellett and his said wife Callie M. Kellett", and in the habendum clause that Wm. M. Kellett should have and hold the property "as such community property."

The Court, in answering a question certified by the Court of Civil Appeals, approved the conclusion reached by the Court of Civil Appeals in a former appeal "that the instruments, although having the form of conveyances, could not legally operate as such, but disclosed merely an attempt by the agreement of husband and wife to convert that which the law made separate property of the latter into community property of the two." The opinion of the Court, written by Associate Justice Williams, contains a careful discussion of the power of the wife to convey her property and the method of exercising that power, with the summary that "the effect of her conveyances, as well as those of others, is governed by the law applicable to the existing facts under which they are made." It states the inquiry into which the case resolves itself to be: "Did the facts essential to make the property in question community property exist when the transaction took place; and if not, could the husband and wife, by their mere volition, make it such in the manner attempted?" The following expressions in the opinion, which explain the meaning and effect of the statutes defining separate and community property (Articles 4613, 4614, 4619, Revised Civil Statutes of 1925), show the grounds and reasons for the Court's decisions:

"Property of husband and wife in this State gets its character, as belonging separately to one of them or in common to both, from the statutes defining their separate and community estates. * * * Separate property of either spouse may be conveyed to the other in such way as to become his or her separate property, and community property may be so conveyed by the husband to the wife as to make it hers separately. This is true, not because the parties chose to name the property separate, but

because the facts transpire to bring it within the statutory definition, and the law, operating upon such facts, vests title in accordance with them. The act of the parties is such as the law defines as necessary to create the separate right. Therefore, the question whether particular property is separate or community must depend upon the existence or nonexistence of the facts which, by the rules of law, give character to it, and not merely upon the stipulations of the parties that it shall belong to one class or the other. * * *

"* * * Here the wife, while she pretends to divest her whole separate title, does not convey it to her husband, but declares that the instrument shall only operate to make the property belong to the community estate, the effect of which would be to vest in her husband an interest and in herself an interest of a different character from that which she owned and pretended to convey, and to put the whole forever beyond her control and subject to that of the husband alone. This makes it apparent that this is not really a conveyance of her title such as she could make, but only an agreement by which a change in the character of such title is attempted, without the existence of the facts necessary, under the law, to effect the change."

Judge Speer has accurately stated the holding in the Kellett case as follows:

"The husband and wife joined in a conveyance of the wife's separate lands to a trustee, upon the expressed condition that such trustee was to reconvey to the husband, to the end, and for the expressed purpose, of converting such separate property into the community of the husband and wife. In a subsequent action between the husband and wife, the court regarded the transaction as an effort to change the status of the property by agreement of the parties through the guise of deeds, and held its status to be unaffected by the attempted conveyance. It was held not to be an intended gift to the husband, which the wife could in law make, for had such effect been given the deeds it would have constituted the property his separate estate, when the purpose was to constitute it community. Had the wife by deed of gift conveyed to her husband a one-half interest in the land, the parties would not yet have owned the whole in community, but their respective portions in their separate rights." Speer's Law of Marital Rights (3d Ed.) pp. 417-418, Sec. 341.

The contract and the deed executed by Mr. and Mrs. Tittle, as clearly as did the deeds in the Kellett case, disclose the intention and purpose of the parties to the instruments to change

by agreement the character of the title to the property from separate property to community property, that is, that the deed "shall only operate to make the property belong to the community estate."

In this case, where the only parties are those who were parties to the contract and the deed, we may look to both of the instruments to ascertain the intention of those who executed them. The certificate states that in January following their marriage in November, 1945, Tittle and his wife agreed that all of his separate property would become community property, that the cattle and car owned by Mrs. Tittle would become community property, and that all profits therefrom or from any other source would likewise become community. The certificate further recites that the agreement was reduced to writing, signed and acknowledged by the parties on January 5, 1946. The written agreement has been set out above. It recites that it is made "to further combine our individual property into community property", that L. A. Tittle shall "make a deed to L. A. and Zephie Tittle to all real estate owned by him individually, and all personal assets, including bank account, as cash shall be considered as of this date to be community property." It provides that Zephie Tittle shall turn over "to L. A. Tittle and herself as community property" the Ford automobile and all cattle owned by her individually. The parties agree that should they cease to live together within five years they shall as far as possible return to each his or her individual property, and that Zephie Tittle shall return to L. A. Tittle deeds or proceeds of the real estate which was personally owned by him. The contract contains the agreement that any profits accumulated, regardless of source, "will be treated as partnership and on a fifty-fifty basis."

On January 8, 1946, three days after the execution of the contract, L. A. Tittle executed the deed by the terms of which for a consideration of $1.00 "and the further consideration for the purpose of converting the hereinafter described land as community property to be owned jointly by the said L. A. Tittle and the said Zephie Tittle, husband and wife", he conveyed to *himself* and his wife the tract of land.

It very clearly appears from the transaction and the terms of the instruments that the parties were informed as to the meaning of separate property and community property, and that their purpose was to convert into community property the tract of land and certain personal property separately owned by the husband and certain personal property separately owned

by the wife, to put all of this property into the marital partnership so that it and all profits arising from it and from any other source should be used and enjoyed by them as community property and "on a fifty-fifty basis."

The naming of Tittle and his wife as grantees in Tittle's deed is consistent with their purpose as expressed in the instruments. He could not convey the land or an interest in it to himself, but he sought by naming himself and his wife as grantees to further evidence the intention to convert the land into community property. Had the intention been to convey the land or an interest in it to his wife, she alone would have been named as grantee, and the deed to her as grantee, and without the recital that it was made to convert the land into community property, would have vested in her title to the land, or an interest in it, as her separate property. Kellet v. Trice, 95 Texas 160, 169-170, 66 S. W. 51. The deed cannot be given the effect of conveying to the wife either the entire interest or an undivided one-half interest in the land in separate ownership. That would contradict the express terms of the deed and the even more explicit provisions of the contract pursuant to which the deed was executed. The deed purports to convey the husband's entire interest, and not to his wife, but to himself and his wife, and for the expressed purpose of converting the land into community property. The deed is not really a conveyance of the husband's title, but in purpose and in substance it is "only an agreement by which a change in the character of such title is attempted, without the existence of the facts necessary under the law to effect the change." Kellett v. Trice, 95 Texas 160, 171, 66 S. W. 51.

The Kellett case concerned the wife's separate property and an effort by the husband and wife to convert it into community property, and the opinion makes reference to limitations imposed by law upon the wife's contracts and conveyances. The question in the instant case relates to separate property of the husband which he and his wife undertook to change to community property. The decision in the Kellett case turns upon the principle that "property of husband and wife in this State gets its character, as belonging separately to one of them or in common to both, from the statutes defining their separate and community estates." The wife's separate property and the husband's separate property are defined by the statutes in identical terms. Articles 4613, 4614. The controlling principle applies to attempts by the husband and wife to change the husband's separate property to community property by mere agreement

as well as to their attempts thus to change the wife's separate property.

Appellant suggests a distinction between this case and the Kellett case, in this that under the agreement she delivered to her husband for the community estate certain personal property separately owned by her, which would be a part of the consideration for the deed, whereas the opinion in the Kellett case shows that the deeds there involved were without valuable consideration. This difference does not render the rule of the Kellett caes inapplicable to this case. As stated in the certificate, appellee's deed was executed solely in consideration of and pursuant to the written agreement. The deed was part of the undertaking of the parties by mere agreement to change land and personal property separately owned by the husband and personal property separately owned by the wife to community property.

No departure was made from the decision in the Kellet case either by Belkin v. Ray, 142 Texas 71, 176 S. W. (2d) 162, or by Taylor v. Hollingsworth, 142 Texas 158, 176 S. W. (2d) 733. In the Belkin case separate property of the wife, Ray Marks, was conveyed by her and her husband, Harry Marks, to one H. H. Ray for a recited consideration of $10.00, which was not paid. Two days thereafter the same property was conveyed by H. H. Ray to Harry Marks and wife, Ray Marks, for a recited consideration of $10.00, which was not paid. The court held that the deeds "operated to convey this property to Harry Marks and Ray Marks so that each would own an undivided one-half interest therein." Neither of the deeds contained any expression of an agreement or an intention to convert the land into community property.

The same is true of Taylor v. Hollingsworth, 142 Texas 158, 176 S. W. (2d) 733. The land there involved was community property, subject to a vendor's lien securing a note for $25,980.00. The husband, T. R. Lambert, conveyed the land to his wife, Dorothy Lambert, by deed which recited that it was conveyed to her as her separate property and for a consideration of $10.00 and the further consideration of the assumption by her of the vendor's lien note for $25,980.00. Three months later T. R. Lambert and Dorothy Lambert conveyed the land to one Artie Taylor for a recited consideration of $10.00 and other good and valuable considerations. On the same day Artie Taylor, joined by her husband, conveyed the land to T. R. Lambert and Dorothy Lambert for a consideration of $10.00 and other valuable considerations, and the further consideration of their

assumption of the vendor's lien note. There is no statement in any of the deeds of any purpose or intention to change separate property into community property, and no statement that the land was conveyed to the husband and wife as community property. The Court of Civil Appeals held that the land did not become the separate property of the wife but was community property at all times after the execution of the vendor's lien note. 169 S. W. (2d) 519. The Supreme Court did not pass upon this question, but held that "since the contract of assumption by the wife of the note mentioned in this deed (from Lambert to his wife) could not be enforced as a personal obligation of the wife, the contracting parties had the right to abrogate it and restore the status quo of the whole situation as it existed before the deed was made", and that "this they did by the two subsequent deeds already described." 142 Texas 158, 166, 176 S. W. (2d) 733.

The following authorities lend support to the conclusion which we have expressed: King v. Bruce, 145 Texas 647, 201 S. W. (2d) 803, 171 A. L. R. 1328; Arnold v. Leonard, 114 Texas 535, 273 S. W. 799; McDonald v. Lambert, 43 New Mex. 27, 85 Pac. (2d) 78, 120 A. L. R. 250.

We answer the first of the certified questions as follows: Under the pleadings and evidence set out in the certificate the trial court did not err in decreeing the deed executed by L. A. Tittle on January 8, 1946, to be "void and of no further force and effect whatsoever" by virtue of the holding in Kellet v. Trice, 95 Texas 160, 66 S. W. 51.

The second certified question is not answered because answer is requested only in the event we should decide that the trial court erred in its holding as to the above described deed.

Opinion delivered April 27, 1949.

Associate Justice Harvey not sitting.

Rehearing overruled June 8, 1949.
Note: For opinion of Court of Civil Appeals in compliance with this opinion, see 221 S. W. (2d) 576.