**FIRST NAT. BANK OF BRECKENRIDGE et al. v. WAGNER SUPPLY CO.**
(No. 11995.)

Court of Civil Appeals of Texas. · Fort Worth.
June 30, 1928.

Rehearing Denied Sept. 29, 1928.

Goggans & Allison, of Breckenridge, for appellants.

E. W. Bounds and Samuels, Foster, Brown & McGee, all of Fort Worth, for appellee.

CONNER, C. J. The present contest arises out of garnishment proceedings. Previously thereto the appellee, Wagner Supply Company, had recovered a judgment in the sum of $612.76, with interest and costs against Matt Madill and others in the county court at law No. 2 in Tarrant county. This proceeding was instituted on August 7, 1926, by appellee, who, on that day and in due form, sued out a writ of garnishment, which was duly served upon the appellant First National Bank of Breckenridge in Stephens county. The bank, in substance, answered that it had the sum of $279.83 in its possession deposited to the credit of Mrs. Matt Madill, but that it "does not know whether said sum is in fact owned by the said Mrs. Madill on whether the same is the property of Matt Madill." The answer in other respects was in compliance with the statute relating to the subject, the prayer being that Mr. and Mrs. Madill be cited and made parties to the proceeding and the court determine the disposition of the fund. To this answer of the bank the appellee, Wagner Supply Company, filed its plea, alleging that the fund in question belonged to Matt Madill.

Mrs. Matt Madill, on September 4, 1926, filed a replevy bond, with Louis Daiches, M.

M. Robinson, and M. Seigal as sureties, by virtue of which the bank delivered to her the fund in question.

On August 30, 1927, Matt Madill filed a plea of privilege, alleging his residence to be in Stephens county, and prayed that the cause be transferred to the proper court of that county for trial. This plea was contested and overruled by the court. Thereafter, on September 10, 1927, Mrs. Matt Madill, joined pro forma by her husband, filed a plea of intervention, in which it was alleged that the fund in fact was the separate property of Mrs. Matt Madill. These pleadings on the part of the appellee and the Madills are severally designated and presented as controverting the answer of the bank.

The case was submitted to the court without a jury, and a trial resulted in a judgment in favor of the appellee, Wagner Supply Company, and against the defendant Matt Madill, and from the judgment so rendered, both the bank and the Madills separately gave supersedeas bonds and otherwise duly prosecuted this appeal.

There are no separate findings of fact and law; but, as recited in the judgment, the court found that the original judgment in favor of the Wagner Supply Company against Matt Madill was valid and subsisting; that the bank was indebted, in the sum of $279.83, to Matt Madill at the time the writ of garnishment was served and at the time at which it filed its answer on the 12th day of August, 1926; that the indebtedness of the bank was owing to Matt Madill and not to Mrs. Madill; and that the bond (designated in the record as a replevy bond) was not a statutory bond such as would relieve the First National Bank of Breckenridge for liability on the writ of garnishment.

In several forms it was insisted in the court below that this case should have been transferred to the proper court in Stephens county for trial, where all of the defendants resided; and error is assigned in this court because of the failure to do so. The contention referred to is based on article 4096, Rev. Statutes of 1925, which reads, so far as pertinent, as follows:

"Should the garnishee be a foreign corporation, not incorporated under the laws of this state, and should its answer be controverted, the issues thus formed shall be tried in the court where the main suit is pending, or was tried; but if the garnishee whose answer is controverted, resided in some county other than the one in which the main case is pending or was tried, and is not a foreign corporation, then upon the filing of a controverting affidavit by any party to the suit, the plaintiff may file in any court in the county of residence of the garnishee having jurisdiction of the amount of the judgment in the original suit, a duly certified copy of the judgment in such original suit and of the proceedings in garnishment, including

a certified copy of the plaintiff's application for the writ, the answer of the garnishee, and the affidavit controverting such answer. The court wherein such certified copies are filed shall try the issues made as provided by law." .

It is insisted that the appellant bank is not a foreign corporation, notwithstanding its organization under federal laws, and that hence, the answer of the bank having been controverted, the case should have been transferred as provided in the article quoted. But we think it unnecessary to discuss or determine the question of ·whether the bank as organized and established is a domestic instead of a foreign corporation, for the article limits the privilege of transfer to the plaintiff; neither the garnishee not the defendant being accorded the right. Moreover, the answer of the garnishee was merely to the effect that it had on deposit the stated sum credited to Mrs. Madill, that it did not know whether it belonged to her or her husband, Matt Madill, the judgment debtor of the plaintiff, the Wagner Supply Company; and the prayer was that Mr. and Mrs. Madill be cited to appear and that the court determine to whom the fund actually belonged. It is not disputed that the bank was well within its rights of procedure in so answering. The Wagner Supply Company replied with pleas to the ·effect that the fund belonged to Matt Madill, and the Madills in their plea of intervention answered that the fund in fact belonged to Mrs. Matt Madill. It is thus made apparent that the article of the statute quoted has no application in this case. The bank made no claim to the fund, asserted no right therein, alleged ignorance of its true ownership, and a want of knowledge of any other person possessing effects belonging to the defendant Matt Madill. In other words, the bank's answer fully complied with the writ of garnishment, and not an issuable fact therein stated was directly or indirectly denied in the answering pleas of the bank or of Mr. and Mrs. Madill. The appellant bank merely assumed the attitude of a stakeholder of the fund in controversy, the Madills presenting the issue of ownership. Moreover, the pleadings of all parties appear to have been voluntary appearances, in which affirmative relief was sought, and no one of such pleas was made subject to the pleas that the case be transferred, which, hence, were waived. We accordingly conclude that the trial court did not err in declining to transfer the case and in assuming jurisdiction.

We also overrule the contention of appellant bank that the court erred in rendering judgment against it, instead of against the appellants Mrs. Madill and the sureties on what is designated as her replevy bond. The trial court found, as stated, that the bond given by Mrs. Madill was not a valid statutory bond, and hence its judgment against the bank, instead of the sureties on the bond. If

the court's conclusion that the bond was invalid as a replevy bond is correct, the judgment as rendered was proper. See article 4084, Rev. Statutes of 1925; Army Bank v. Sunset Wood Co. (Tex. Civ. App.) 206 S. W. 222. The contention of appellee is that the bond is invalid as a replevy bond for the reason that Mrs. Madill, being at the time a feme covert, could not so contract, and arguments of counsel, pro and con, revolved around the question of Mrs. Matt Madill's legal capacity to contract. We do not, however, find it necessary to determine this question.

Article 4084, supra, so far as here pertinent, provides that—

"From and after the service of such writ of garnishment, it shall not be lawful for the garnishee to pay to the defendant any debt or to deliver to him any effects; nor shall the garnishee, if an incorporated or joint stock company in which the defendant is alleged to be the owner of shares or to have an interest, permit or recognize any sale or transfer of such shares or interest; and any such payment or delivery, sale or transfer, shall be void and of no effect as to so much of said debt, effect, shares, or interest as may be necessary to satisfy the plaintiff's demand. The defendant may, at any time before judgment, replevy any effects, debts, shares, or claims of any kind seized or garnisheed, by giving bond, with two or·more good and sufficient sureties to be approved by the officer who issued the writ of garnishment, payable to the plaintiff, in double the amount of the plaintiff's debt, and conditioned for the payment of any judgment that may be rendered against the said garnishee in such suit, which when properly approved shall be filed among the papers in the cause in the court in which the suit is pending. In all proceedings in garnishment where the defendant gives bond as herein provided for, such defendant may make any defense which the defendant in garnishment could make in such suit."

The right to replevy funds or effects impounded by a writ of garnishment is purely statutory, and it is apparent from a reading of the statute quoted that the right conferred is upon the defendant in the judgment and not on the intervening claimant of the impounded fund, such as Mrs. Matt Madill, as we so held in the case of Davis v. McFall, 168 S. W. 453, writ refused. By her pleading, Mrs. Madill assumed the position of a plaintiff seeking to establish her asserted right to funds that were on deposit in the bank. As to this issue, the plaintiff in the judgment against Matt ·Madill, the appellee here, was the defendant, and it was only by a decree of court establishing her right that she could lawfully obtain such possession of the funds she claimed. The court therefore did not err in refusing to accept the bond of Mrs. Madill and her sureties as a lawful replevy bond. This being true, as we think it is, and the court having found that the funds were the property of Matt Madill, the judgment against the appel-

lant bank was proper under the requirements of article 4084. In this connection, we should perhaps state that the judgment of the trial court expressly provided that it was rendered "without prejudice to the rights of said First National Bank of Breckenridge to assert its claim for the money paid out on this judgment against Matt Madill."

■■■ The only remaining question of importance is presented by the contention of appellants Mr. and Mrs. Madill that the evidence is insufficient to support the court's finding that the funds garnished belonged to Matt Madill. It is undisputed that the funds in question were deposited in the appellant bank in the name of Mrs. Matt Madill, and article 4622, Rev. Statutes of 1925, reads as follows:

"Funds on deposit in any bank or banking institution, whether in the name of the husband or wife, shall be presumed to be the separate property of the party in whose name they stand, regardless of who made the deposit, and unless said bank or banking institution is notified to the contrary, it shall be governed accordingly in honoring checks and orders against such account."

The presumption declared by the statute, however, is not made conclusive. It is a rebuttable one, and the state of the evidence as we find it is substantially as follows: In behalf of appellee, C. E. Martin, the cashier of appellant bank, testified and identified the deposit slips in the name of Mrs. Matt Madill. There are nine of them in all. Each slip shows a deposit of a check instead of cash; each slip has printed thereon, "Check accepted subject to collection." The slips show checks deposited as follows: 350; 65–16 credit; 50; 50; 36.55 plus 572.72; 590–100 credit, 490; 150; 1500; 200; 246.50. The witness testified that his record showed that the item last above noted was sent out for collection and given credit when returned; that the draft was drawn by Matt Madill on W. F. Arnold, at Stamford, Tex., and was paid.

Mr. A. S. Bromley testified, in part and in substance, that he was a teller in the bank during the period in question, and as such received and paid checks on the account of Mrs. Matt Madill; that Matt Madill made most of the deposits; that he did make deposits to the credit of Mrs. Matt Madill; that he believed that he saw a number of checks payable to Matt Madill from the Black Steel & Wire Company; that he was authorized to pay out on the checks of either Mr. or Mrs. Madill, and did so; that he did not believe that "he had ever deposited checks made to her to that account. I could not say for sure if all the checks deposited to that account were made payable to the order of Matt Madill." That he did not recall whether Matt Madill deposited his pay checks; that he did deposit "some large checks," but whether he ever cashed the Black Steel & Wire Company's check he could not say.

There was also evidence to the effect that Madill was employed by the Black Steel & Wire Company at a salary of $300 a month; the evidence, however, is not clear that any of his salary| checks were deposited. It plainly appears, however, that a number of large checks were deposited, one for $1,500, all indorsed, "accepted subject to collection"; it affirmatively appearing that the one for $246.50 was a draft payable to Matt Madill by a party at Stamford, Tex.

Neither Matt Madill nor Mrs. Matt Madill, nor any other person, attempted to trace the source of the checks deposited to the credit of Mrs. Madill. Apparently, at least, they were acquired and deposited to the credit of Mrs. Madill during her marriage with Matt Madill, and under the Constitution and statutes presumptively, at least, community property and subject to appellee's debt. Mr. and Mrs. Madill, of all persons, must be presumed to know best when, how, and from whom the checks so deposited were acquired. They declined, or at least failed, to make any effort to show the facts, if any, which would establish a right thereto in Mrs. Madill as her separate property, and having failed to so do, they cannot complain that the court held that the evidence as a whole showed the fund to belong to Matt Madill, or at least to the community estate of the two, subject to the writ of garnishment.

We conclude that the evidence supports the judgment of the court below, and that it should in all things be affirmed.