**AMARILLO NATIONAL BANK and Caprock Leasing Company, Appellants,**

**v.**

**Jack D. LISTON et ux., et al., Appellees.**

**No. 8084.**

Court of Civil Appeals of Texas, Amarillo.

Nov. 23, 1970.

Rehearing Denied Dec. 21, 1970.

On Second Rehearing Feb. 22, 1971.

Third Rehearing Denied March 22, 1971.

Culton, Morgan, Britain & White and Neal R. Allen, Amarillo, John B. Connally and Harry M. Reasoner, Vinson, Elkins, Searls & Connally, Houston, Underwood, Wilson, Sutton, Heare & Berry and Jerome W. Johnson, Amarillo, for appellants.

Folley, Snodgrass & Calhoun, Roy C. Snodgrass, Jr., Monning & Hazlewood, Jack Hazlewood, Gibson, Ochsner, Adkins, Harlan & Hankins, Wayne P. Sturdivant, Sanders, Miller & Baker, Lon Moser, Robert Sanders, Amarillo, for appellees.

NORTHCUTT, Justice.

This appeal involves eleven consolidated suits by the Amarillo National Bank and Caprock Leasing Co., judgment creditors of Jack D. Liston, whereby they have sought to satisfy their judgment from the community assets of Jack D. Liston and his wife, Bonne Whittenburg Liston. The Amarillo National Bank's judgment here sought to be collected is for the sum of $190,896.51 plus interest from June 9, 1967, the date the judgment was obtained, and Caprock Leasing Co.'s judgment is for $83,510.52 plus interest from date of judgment December 1, 1967. Mrs. Liston was not a party to either of the suits where said judgments were received against Jack D. Liston. The Amarillo National Bank and Caprock Leasing Co. will hereafter be referred to as appellants and all other parties as appellees.

It was appellees' contention that there was no community property owned by Jack D. Liston and wife, Bonne Liston, because of a certain instrument dated August 2, 1960, captioned In Contemplation

of Divorce and Permanent Separation. Said agreement was as follows:

"THE STATE OF TEXAS ⎱
COUNTY OF POTTER ⎰

This contract and agreement made and entered into this the 2nd day of August, 1960, by and between JACK D. LISTON, hereinafter referred to as First Party, and BONNE W. LISTON, hereinafter referred to as Second Party, husband and wife:

WITNESSETH:

"WHEREAS, the parties hereto are now husband and wife, and unhappy differences have arisen and do now exist between them, the result of which is that said parties have lived separate and apart since the 14th day of June, 1960, and have become definitely and finally convinced that it will be impossible for them, now or hereafter, to live together as husband and wife, and they contemplate that a divorce proceeding will be commenced in the near future; and

"WHEREAS, the parties hereto desire to settle all questions as to their respective property rights between themselves, and have been fully and independently advised by their respective counsel in regard thereto.

"NOW, THEREFORE, in consideration of the mutual covenants each to the other running, the parties hereto have agreed and do hereby agree as follows:

I.

"There is no community property belonging to them, except possibly some of those items of property described in Exhibit 'A' hereto attached and made a part hereof; that all other community property and funds received by the parties hereto during their married life, with exception above mentioned, have been consumed in their living expenses during such time.

II.

"All of the property of every kind and character and wheresoever situated, except for those items of property described in Exhibit 'A' hereto attached, standing in the name of either of the parties hereto or in both of their names, and all rights to any property that may have accrued during said marriage, and any equitable title to property, the legal title to which may be in others than First Party and Second Party, is the separate property of Second Party.

III.

"Second Party hereby agrees to assume all of the indebtedness due and owing to the Amarillo National Bank of Amarillo, Texas, which are evidenced by notes and other written obligations payable to said bank and are signed by the parties hereto or either of them.

IV.

"First Party shall hereafter have and own, as his separate property, those items of property set forth and described in Exhibit 'A' hereto attached. Second Party agrees to execute all assignments, bills of sale, or other instruments necessary to give First Party good title to the property described in this paragraph as belonging to him.

V.

"This contract is made in contemplation of divorce and permanent separation; however, it is agreed that this property settlement shall be binding upon the parties hereto even though no divorce is ever applied for or granted to either party hereto.

VI.

"First Party, the said Jack D. Liston, for and in consideration of TEN DOLLARS ($10.00) and the other consideration herein expressed, the receipt of which is hereby acknowledged, grants, sells, conveys, transfers and assigns to the Second Party,

the said Bonne W. Liston, all of the property of every kind and character and wheresoever situated, real, personal and mixed, tangible and intangible, subject to the exception herein described below, standing in the name of either of the parties hereto or in their joint names, and all rights to any property that may have accrued to either of them during said marriage, and the equitable title to all property, if any, the legal title to which may be in others than the parties hereto.

"There is, however, excepted and reserved from this conveyance and transfer all of those items of property set forth in Exhibit 'A' hereto attached. It is hereby intended that this instrument shall be a present conveyance of the title to Second Party of all such property described in the preceding paragraph as belonging to Second Party; however, First Party hereby agrees that if requested to do so by Second Party, for title purposes, he will execute deeds, bills of sale, transfers, assignments, releases and other instruments covering specifically described properties.

"EXECUTED this the 2nd day of August, 1960.

s/ Jack D. Liston
JACK D. LISTON, First Party

s/ Bonne W. Liston
BONNE W. LISTON, Second Party

"The STATE OF TEXAS ⎱
COUNTY OF POTTER ⎰

BEFORE ME, the undersigned, a Notary Public in and for said County, Texas, on this day personally appeared JACK D. LISTON, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 2nd day of August, 1960.

s/ Eva Metcalf
Notary Public in and for
Potter County, Texas

"The STATE OF TEXAS ⎱
COUNTY OF POTTER ⎰

BEFORE ME, the undersigned, a Notary Public in and for said County, Texas, on this day personally appeared BONNE W. LISTON, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that she executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 2nd day of August, 1960.

s/ Eva Metcalf
Notary Public in and for
Potter County, Texas

------------------------------------

EXHIBIT 'A'

"1. Personal Clothing

2. Personal Effects

3. Beechcraft Aircraft 'G'

4. Oldsmobile 58"

◼ In Paragraph 3 of the agreement, Mrs. Liston assumed all of the indebtedness due and owing to the Amarillo National Bank evidenced by notes or other written obligations signed by Mr. and Mrs. Liston or either of them. Such provision would not be enforceable as against Mrs. Liston. During marriage the wife cannot make an enforceable agreement to assume primary liability for debts of the community even as between the husband and wife. Manning v. Benham, 359 S.W.2d 927 (ref. n. r. e.) and Taylor v. Hollingsworth, 142 Tex. 158, 176 S.W.2d 733.

This agreement was never filed for record, and on the same day the agreement was executed, Jack Liston executed four vendor's lien note assignments and two warranty deeds in favor of Bonne W. Lis-

ton but these assignments and deeds were never filed for record until several years afterwards.

The case was submitted to a jury upon 79 special issues. The verdict of the jury was received and filed with the district clerk on August 7, 1969. On September 30, 1969, the court entered judgment decreeing that the appellants recover nothing as against the named defendants and garnishees except as to the judgment for appellant, Caprock Leasing Co., against Hallmark Aviation, Inc. The judgment for Caprock Leasing Co. against Hallmark Aviation, Inc. is not involved here. The judgment decreed that the agreement between the Listons was valid and binding as to all parties, and that all the property involved was the separate property of Mrs. Liston. The judgment, therefore, was based upon the agreement, supra, in determining that all of the property involved in this litigation was the separate property of Bonne W. Liston, and there was no community property subject to the debts of Jack D. Liston. It is appellants' contention that the agreement is of no force and effect as to them, and that the agreement did not make the community property the separate property of Mrs. Liston because the agreement was in conflict with the Texas Constitution Art. 16, Sec. 15, Vernon's Ann.St. and Art. 4624a, Vernon's Ann. Texas Civil Statutes, and that the findings of the jury showed certain property to be community.

Art. 16, Sec. 15 of the Texas Constitution provides in part as follows: "All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterward by gift, devise or descent, shall be the separate property of the wife." The article also provides: "This Amendment is self-operative, but laws may be passed prescribing requirements as to the form and manner of execution of such instruments, and providing for their recordation, and for such other reasonable requirements not inconsistent herewith as the Legislature may from time to

time consider proper with relation to the subject of this Amendment." The Legislature passed Art. 4624a providing how such partition or exchange could be accomplished. Art. 4624a provides that a partition or exchange of community property between a husband and wife may be accomplished in the following manner:

"Section 1. A husband and wife, without prejudice to pre-existing creditors, may from time to time, by written instrument as if the wife were a feme sole, partition between themselves in severalty or into equal undivided interests all or any part of their existing community property, or exchange between themselves the community interest of one spouse in any property for the community interest of the other spouse in other community property. Such partition or exchange shall be effectuated by a written instrument subscribed and acknowledged by both spouses in the manner now required by law for the conveyance of realty; whereupon the property or interest in property set aside to each spouse by such instrument shall be and constitute a part of the separate property of such spouses.

"Such partition shall not be good or effectual against a purchaser in good faith, without notice thereof and for a valuable consideration, nor against any creditor unless filed for record with the County Clerk of the county or counties in which such property shall be situated.

"If such instrument purports to exchange property or to partition property between the husband and wife, otherwise than as equal undivided interest in the same property, or as equal shares or units of identical personal property, such instrument shall not be valid unless approved by the Court upon written application of the husband and wife, addressed to the District Court of the county in which they or either of them reside. Such petition must set out facts showing that the transaction is not to the dis-

advantage of the wife, and shall be filed and docketed as in other cases, and at any time thereafter the District Court may, in term time, take up and hear said petition and evidence in regard thereto, and enter an order accordingly either approving or disapproving the transaction.

"Sec. 2. This Act shall be cumulative of all laws governing conveyance of property, and no provision of this Act shall be construed as limiting or restricting the right of the husband to execute to his wife a conveyance or gift of all or any portion of his interest in the community property."

The property here involved was not a gift to Mrs. Liston from Mr. Liston. The agreement stated there was no community property except personal clothing, personal effects, Beechcraft aircraft and an Oldsmobile 58, and all these items were declared as the separate property of Jack D. Liston. Consequently, this was not a partition or exchange of community property as provided for by Art. 4624a. Since the property here involved was not a gift, in order for Mr. and Mrs. Liston to change community property to separate property, as was attempted to be done by the terms of the agreement here involved, they had to comply with the terms of Art. 4624a. Williams v. McKnight, 402 S.W.2d 505 (Tex.Sup.); Arnold v. Leonard, 114 Tex. 535, 273 S.W. 799; Hilley v. Hilley, 161 Tex. 569, 342 S.W.2d 565. It is stated in Hilley v. Hilley as follows:

"Article XVI, Section 15, of the Constitution, and Article 4614 of the statutes define the wife's separate property as that owned or claimed by her before marriage and that acquired afterward by gift, devise or descent. The husband's separate property is defined in similar terms by Article 4613. Article 4619 provides that all property acquired by either the husband or wife during marriage, except that which is the separate property of either, shall be deemed community property. All marital property is thus either separate or community. If ac-

quired before marriage by any method, or after marriage by gift, devise or descent, it is separate; otherwise it is community. There are only two exceptions. Property purchased with separate funds is separate, Love v. Robertson, 7 Tex. 6, 56 Am.Dec. 41, and community property partitioned in the manner provided in Articles 4624a and 881a–23, becomes separate property.

"The stock involved in this case was acquired by purchase during marriage, and by definition became community property unless the survivorship provision inserted in the certificates with the knowledge and consent of the husband and wife converted the same into the latter's separate property upon her husband's death. The parties clearly intended that result, but as pointed out in Kellett v. Trice, 95 Tex. 160, 66 S.W. 51, 54, 'the question whether particular property is separate or community must depend upon the existence or nonexistence of the facts, which, by the rules of law, give character to it, and not merely upon the stipulations * * * that it shall belong to one class or the other. Thus, when one spouse passes to the other by gift his or her title to separate property, it could not become the community property of both, because the law declares that property so acquired shall be the separate property of the donee; and a gift by the husband to the wife of his interest in community property would become the separate property of the donee for the same reason. And so property acquired in the name of either spouse during marriage, otherwise than by gift, devise or descent, or in exchange for separate property, would, by force of the statute, be community property. It is true that in the acquisition or afterwards the husband may give to the wife all his interest in the property, and thus, by gift, make it hers; but at last this would be true only because the facts defined in the law exist, and the separate right is derived through a gift, the husband having full power over the community es-

tate.' See also Tittle v. Tittle, 148 Tex. 102, 220 S.W.2d 637. In Cox v. Miller, 54 Tex. 16, it was said that while the husband may make a direct gift of his separate property or the community estate to his wife, the spouses cannot by a mere agreement change the character and nature of the rights and interest in property owned or acquired by them from that prescribed by law."

Art. 16, Sec. 15 of the Constitution and Art. 4624a provide that a husband and wife may partition or exchange their community property. It is provided in Art. 4624a "such partition shall not be good or effectual against a purchaser in good faith, without notice thereof and for a valuable consideration, nor against any creditor unless filed for record with the County Clerk of the county or counties in which such property shall be situated." Mr. and Mrs. Liston did not file for record the contract in question, and neither did the agreement provide an equal undivided interest in the same property, nor equal shares or units of identical personal property, and did not have the agreement approved by a District Court. As we view Art. 4624a, it means that such assignment as here involved will not be treated as a protected assignment and thus constructive notice thereof until filed. Consequently, since it was not filed, it is not binding on the creditors, and the issue to be determined is what was community property. The issue is not whether appellants knew of the agreement between Mr. and Mrs. Liston, but the issue is did the Listons comply with Art. 4624a as to make the instrument a protected assignment against creditors, and any notice a creditor might have of an invalid instrument would not validate the instrument, and the intentions the Listons might have had as to a divorce later to be filed would have no effect in changing community property to separate property as against creditors since they did not comply with the article.

We are of the opinion, and so hold, the trial court erred in holding the agreement dated August 2, 1960, was valid and binding on all parties, and that all of the property involved in the litigation (except the debt owing from Hallmark Aviation, Inc. to Hallmark Academy, Inc.) to be the separate property of Bonne W. Liston.

The appellants brought this action seeking to collect their judgments against Jack D. Liston upon three proceedings as follows: (1) Suit to set aside fraudulent conveyances made on the day the Amarillo National Bank obtained judgment against Jack D. Liston; (2) By garnishment proceedings to recover loans payable to the Listons and other assets and (3) A suit for an injunction to compel the Listons to produce the stock certificates in their possession. In determining what was the separate property and what was community property of Mr. and Mrs. Liston at the time here involved, we must consider Art. 16, Sec. 15, Texas Constitution and Articles 4614 and 4619, Texas Revised Civil Statutes. Art. 16, Sec. 15 of the Constitution provides: "All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterward by gift, devise or descent, shall be the separate property of the wife." Art. 4614, T.C.S. provides: "All property acquired by the wife, both real and personal, owned or claimed by her before marriage, and that acquired afterward, by gift, devise or descent, as also the increase of all lands thus acquired, is the separate property of the wife." Art. 4619, T.C.S. provides: "All property acquired by either the husband or wife during marriage, except that which is the separate property of either, shall be deemed the common property of the husband and wife."

The jury in answer to special issues concerning certain property and the manner Bonne W. Liston or Jack D. Liston received the same, found as follows:

"SPECIAL ISSUE NO. 2.

(a) Do you find from a preponderance of the evidence that a portion of the

monies distributed to Bonne Whittenburg Liston by the Central Cattle Company included interest or earnings occurring prior to August 2, 1960, on money deposited with the Spool Company?

Answer: 'Yes' or 'No'.

Answer: Yes

If you have answered the preceding subdivision (a) 'Yes', and in that event only, answer the following subdivision:

(b) Do you find from a preponderance of the evidence that such interest or earnings on money, if you have so found, became so commingled with monies from other sources that they cannot be identified?

Answer: 'Yes' or 'No'

Answer: Yes

## "SPECIAL ISSUE NO. 3.

(a) Do you find from a preponderance of the evidence that some of the monies invested in the Central Cattle Company prior to August 2, 1960 included monies the source of which it is not possible to determine?

Answer: 'It included such monies' or 'It did not include such monies'.

Answer: It included such monies.

If you have answered the preceding subdivision (a) 'It included such monies', and in that event only, answer the following subdivision:

(b) Do you find from a preponderance of the evidence that such monies invested in Central Cattle Company as found in the preceding subdivision (a), if you have so found, became so commingled with monies from other sources that it is not possible to identify them?

Answer: 'Yes' or 'No'.

Answer: Yes

## "SPECIAL ISSUE NO. 4.

(a) Do you find from a preponderance of the evidence that some of the monies invested in the Central Cattle Company included cash dividends from stock owned by Jack D. Liston or Bonne Whittenburg Liston received prior to August 2, 1960?

Answer: 'Yes' or 'No'.

Answer: Yes

If you have answered the preceding subdivision (a) 'Yes', and in that event only, answer the following subdivision:

(b) Do you find from a preponderance of the evidence that cash dividends so invested in Central Cattle Company, if you have so found, became so commingled with monies from other sources before being so invested that it was not possible to identify them?

Answer 'Yes' or 'No'.

Answer: Yes

## "SPECIAL ISSUE NO. 5.

(a) Do you find from a preponderance of the evidence that some of the monies invested in the Central Cattle Company included interest payments made to Jack D. Liston or Bonne Whittenburg Liston prior to August 2, 1960?

Answer: 'Yes' or 'No'.

Answer: Yes

If you have answered the preceding subdivision (a) 'Yes', and in that event only, answer the following subdivision:

(b) Do you find from a preponderance of the evidence that interest payments invested in Central Cattle Company, if you have so found, became so commingled with monies from other sources before being so invested that it was not possible to identify them?

Answer 'Yes' or 'No'.

Answer: Yes

"SPECIAL ISSUE NO. 6.

(a) Do you find from a preponderance of the evidence that a portion of the monies distributed to Bonne W. Liston by the Central Cattle Company included proceeds received before August 2, 1960 from the sale of cattle born and raised in the course of the business of that company prior to that date?

Answer: 'Yes' or 'No'.

Answer: Yes

If you have answered the preceding subdivision (a) 'Yes' and in that event only, answer the following subdivision:

(b) Do you find from a preponderance of the evidence that such proceeds from the sale of cattle which were raised in the course of business of Central Cattle Company, if you have so found, became so commingled with monies from other sources that they cannot be identified?

Answer: 'Yes' or 'No'.

Answer: Yes

"SPECIAL ISSUE NO. 7.

(a) Do you find from a preponderance of the evidence that some of the monies invested in the Central Cattle Company before August 2, 1960, included monies borrowed by Bonne Whittenburg Liston and Jack D. Liston from Amarillo National Bank prior to that date?

Answer: 'Yes' or 'No'.

Answer: Yes

If you have answered the preceding subdivision (a) 'Yes', and in that event only, answer the following subdivision:

(b) Do you find from a preponderance of the evidence that monies borrowed by Bonne Whittenburg Liston and Jack D. Liston from Amarillo National Bank and invested in Central Cattle Company, if you have so found, became so commingled with monies from other sources that it was not possible to identify them?

Answer: 'Yes' or 'No'.

Answer: Yes

"SPECIAL ISSUE NO. 34.

(a) Do you find from a preponderance of the evidence that a portion of the monies distributed to Bonne Whittenburg Liston by the Central Cattle Company included interest or earnings occurring after August 2, 1960 on money deposited with the Spool Company?

Answer: 'Yes' or 'No'.

Answer: Yes

If you have answered the preceding subdivision (a) 'Yes', and in that event only, answer the following subdivision:

(b) Do you find from a preponderance of the evidence that such interest or earnings on money, if you have so found, became so commingled with monies from other sources that they cannot be identified?

Answer: 'Yes' or 'No'.

Answer: Yes

"SPECIAL ISSUE NO. 35.

(a) Do you find from a preponderance of the evidence that some of the monies invested in the Central Cattle Company subsequent to August 2, 1960 included monies the source of which it is not possible to determine?

Answer: 'It included such monies' or 'It did not include such monies'.

Answer: It included such monies.

If you have answered the preceding subdivision (a) 'It included such monies', and in that event only, answer the following subdivision:

(b) Do you find from a preponderance of the evidence that such monies invested in Central Cattle Company as found in the preceding subdivision (a), if you have so found, became so commingled with monies from other sources that it is not possible to identify them?

Answer: 'Yes' or 'No'.

Answer: Yes

"SPECIAL ISSUE NO. 36.

(a) Do you find from a preponderance of the evidence that some of the monies invested in the Central Cattle Company included cash dividends from stock owned by Jack D. Liston or Bonne Whittenburg Liston received after August 2, 1960?

Answer: 'Yes' or 'No'.

Answer: Yes

If you have answered the preceding subdivision (a) 'Yes', and in that event only, answer the following subdivision:

(b) Do you find from a preponderance of the evidence that cash dividends so invested in Central Cattle Company, if you have so found, became so commingled with monies from other sources before being so invested that it was not possible to identify them?

Answer: 'Yes' or 'No'.

Answer: Yes

"SPECIAL ISSUE NO. 37.

(a) Do you find from a preponderance of the evidence that some of the monies invested in the Central Cattle Company included interest payments made to Jack D. Liston or Bonne Whittenburg Liston after August 2, 1960?

Answer: 'Yes' or 'No'.

Answer: Yes

If you have answered the preceding subdivision (a) 'Yes', and in that event only, answer the following subdivision:

(b) Do you find from a preponderance of the evidence that interest payments invested in Central Cattle Company, if you have so found, became so commingled with monies from other sources before being so invested that it was not possible to identify them?

Answer: 'Yes' or 'No'.

Answer: Yes

"SPECIAL ISSUE NO. 38.

(a) Do you find from a preponderance of the evidence that a portion of the monies distributed to Bonne W. Liston by the Central Cattle Company included proceeds received after August 2, 1960 from the sale of cattle born and raised in the course of the business of that company after that date.

Answer: 'Yes' or 'No'.

Answer: Yes

If you have answered the preceding subdivision (a) 'Yes' and in that event only, answer the following subdivision:

(b) Do you find from a preponderance of the evidence that such proceeds from the sale of cattle which were raised in the course of business of Central Cattle Company, if you have so found, became so commingled with monies from other sources that they cannot be identified?

Answer: 'Yes' or 'No'.

Answer: Yes

"SPECIAL ISSUE NO. 39.

(a) Do you find from a preponderance of the evidence that some of the monies invested in the Central Cattle Company after August 2, 1960, included monies borrowed by Bonne Whittenburg Liston and Jack D. Liston from Amarillo National Bank after that date?

Answer: 'Yes' or 'No'.

Answer: Yes

If you have answered the preceding subdivision (a) 'Yes', and in that event only, answer the following subdivision:

(b) Do you find from a preponderance of the evidence that monies borrowed by Bonne Whittenburg Liston and Jack D. Liston from Amarillo National Bank and invested in Central Cattle Company, if you

have so found, became so commingled with monies from other sources that it was not possible to identify them?

Answer: 'Yes' or 'No'.

Answer: Yes

"SPECIAL ISSUE NO. 40.

Do you find from a preponderance of the evidence that distributions from Central Cattle Company into Bonne W. Liston's account with the Spool Company became so commingled with monies in such account from other sources that they cannot be identified?

Answer: 'Yes' or 'No'.

Answer: Yes"

■ In considering what was community property and what was separate property of the Listons, we will consider the effect of the agreement entered into in contemplation of divorce as making the agreement binding referring again to the provisions of Art. 4624a. If there was not an equal undivided interest in the same property or as equal shares or units of the identical personal property, such instrument was not valid unless approved by the court upon a written application of the husband and wife and addressed to the District Court of the county in which they or either of them resided. The Liston agreement to a settlement or division of their property in contemplation of the divorce matter is not binding on the court, and in most divorce cases the division of the marital property is made within the concept of the judicial discretion of the trial judge. The character of the property whether separate or community is fixed at the very time of acquisition and income during marriage from the estate of either husband or wife is community. Consequently, such income, if distributed to either the husband or wife, would not change the fact that it is community property. Colden v. Alexander et al., 141 Tex. 134, 171 S.W.2d 328; Buckler v. Buckler, Tex.Civ.App., 424 S.W.2d 514.

The findings of the jury in answer to the above special issues is such as to constitute a holding that the revenues received constituted community property, and had become so commingled with the monies from other sources that they cannot be identified. It is stated in Arnold v. Leonard, 114 Tex. 535, 273 S.W. 799 as follows:

"The plain and obvious import of the language of the Constitution is to prescribe a test by which to determine when an acquest by the wife becomes a portion of the wife's separate estate. The test during coverture relates to the method by which the property is acquired. If the method be by gift, devise, or descent to the wife, then the Constitution makes the property belong to the wife's separate estate. If the method of acquiring during marriage be different, then the property falls without the class of separate estate of the wife, as fixed by the Constitution. We think the Supreme Court was doing no more than giving effect to the words of the Constitution when it said, through Chief Justice Willie: 'But of the property which a wife may acquire during marriage, none becomes her separate estate except such as is derived by gift, devise or descent.' Ezell v. Dodson, 60 Tex. [331] 332."

See also Williams v. McKnight, Tex.Sup., 402 S.W.2d 505 and the cases there cited; Warren v. Schawe, Tex.Civ.App., 163 S.W.2d 415 (writ ref'd); Lesage v. Gateley, Tex. Civ.App., 287 S.W.2d 193 (writ dism'd).

Where separate and community property have been so commingled as to defy identification, the statutory presumption that the entire mass is community controls its disposition. Tarver v. Tarver, 394 S.W.2d 780 (Tex.Sup.); Hodge v. Ellis, 154 Tex. 341, 277 S.W.2d 900; Rippy v. Rippy, Tex. Civ.App., 49 S.W.2d 494 (writ ref'd); Taylor v. Suloch Oil Co., Tex.Civ.App., 141 S.W.2d 657 (judgment corr.).

Art. 4619, T.C.S. provides: "All property acquired by either the husband or wife during marriage, except that which is sepa-

rate property of either, shall be deemed the common property of the husband and wife." The fact that a wife might deposit community monies in her special account would not change it to her separate property, and any such community property so deposited would continue to be community. It is stated in Taylor v. Suloch Oil Co., Tex. Civ.App., 141 S.W.2d 657 (err. dism'd, judg. corr.) as follows:

"Art. 4622, R.C.S.1925, provides that 'Funds on deposit in any bank or banking institution, whether in the name of the husband or wife, shall be presumed to be the separate property of the party in whose name they stand, regardless of who made the deposit, and unless said bank or banking institution is notified to the contrary, it shall be governed accordingly in honoring checks and orders against such account.'

"It is held by our courts that this statute was enacted primarily for the guidance of banks in receiving and disbursing deposits but that the presumption obtains and applies generally to creditors and not merely to controversies between husbands, wives and banks. Emerson-Brantingham Implement Co. v. Brothers, Tex.Civ.App., 194 S.W. 608; Graham Nat. Bank v. First Nat. Bank, Tex.Civ. App., 48 S.W.2d 358; Lloyd v. Lloyd, Tex.Civ.App., 107 S.W.2d 1047; First Nat. Bank v. Wagner Supply Co., Tex. Civ.App., 9 S.W.2d 474; Guaranty State Bank v. Shirey, Tex.Civ.App., 258 S.W. 1109; Tatum State Bank v. Gibson, Tex. Civ.App., 24 S.W.2d 506; Commercial State Bank v. Van Dorn, Tex.Civ.App., 25 S.W.2d 192. These authorities hold, however, that the presumption declared by the statute is not conclusive, but is a rebuttable one. It was not intended to supplant nor to destroy the statutory provision of our law created by Art. 4619, R.C.S.1925, Vernon's Ann. Civ.St. Art. 4619, which provides that all property acquired by either the husband or wife during marriage shall be deemed the common property of

the husband and wife. It is a well established rule in this state that where the husband or wife permits his or her separate property to become so commingled with community property that it cannot be identified, the separate property so commingled becomes community property and is subject to the debts of the community. Mitchell v. Mitchell, 80 Tex. 101, 15 S.W. 705; Evans v. Purinton, 12 Tex.Civ.App. 158, 34 S.W. 350; Hamilton-Brown Shoe Co. v. Lastinger, Tex. Civ.App., 26 S.W. 924; Ralls v. Ralls et al., Tex.Civ.App., 256 S.W. 688."

See also Hodge v. Ellis, 154 Tex. 341, 277 S.W.2d 900; Moss v. Gibbs, 370 S.W.2d 452 (Tex.Sup.); Rippy v. Rippy, Tex.Civ. App., 49 S.W.2d 494 (writ ref'd).

It is well established in this state what is the separate property of a wife and what is community. The test during coverture relates to the method by which the property is acquired. If the method be by gift, devise or descent to the wife then the property belongs to the wife's separate estate. If the method of acquiring during marriage is different then it becomes the community property of the husband and wife. Arnold v. Leonard, 114 Tex. 535, 273 S.W. 799; Williams v. McKnight, Tex.Sup., 402 S.W. 2d 505; Hilley v. Hilley, 161 Tex. 569, 342 S.W.2d 565. Consequently, interest on the funds of the community or separate estate, dividends on stocks, whether owned separately or community, paid in cash; proceeds from the sale of cattle bred and raised during marriage, whether or not the herd is community or separate property; rents and revenues from separate as well as from community lands all become community property. The revenues acquired, as shown by the answers by the jury to the special issues, supra, constitutes community property, and has become so commingled with monies from other sources that they cannot be identified.

It is an established rule in this state that when the husband or wife permits his or her separate property to become so commingled with the community property that

it cannot be identified, the separate property so commingled becomes community property, and is subject to the debts of the community. Taylor v. Suloch Oil Co., Tex. Civ.App., 141 S.W.2d 657 (judg. corr.) and cases there cited; Hodge v. Ellis, 154 Tex. 341, 277 S.W.2d 900.

The appellants in seeking to collect the amounts of their judgment are seeking to recover from the community estate of Mr. and Mrs. Liston and from no one else. Before considering the Ed Fagg Trust indebtedness, we must consider to whom the indebtedness is owed and how the matter was consummated. See the answers to Special Issues Two through Seven and 34 through 40, supra. The funds invested or deposited with the Central Cattle Company by the Listons included cash dividends on stocks, interest, proceeds received before August 2, 1960, from the sale of cattle born and raised prior to August 2, 1960, monies borrowed by Bonne and Jack Liston from the Amarillo National Bank prior to August 2, 1960, and other monies the source of which was not possible to determine, and all such monies became so commingled with the monies from other sources that they cannot be identified. Mrs. Liston had received three checks from this source in the following amounts: $274,950.00; $21,000.00 and $5,050.00 and they were deposited in the Amarillo National Bank. Then Mrs. Liston gave three checks for the identical amounts payable to her three children, each check designated as a loan. The three children endorsed these checks to the Ed Fagg Trust and deposited in its account in the Amarillo National Bank. Then in June, 1964, Ed Fagg Trust, at the request of Mrs. Liston, made two payments on the loan. The payments were made by two checks, one for $10,000.00 and one for $6,000.00 payable to the three children and deposited "to apply on loan". The three children endorsed these checks to Mrs. Liston to apply on the loan. The jury found that it was the understanding of all the parties that the Ed Fagg Trust was to receive the monies represented by the checks and

therefore, the use of the money; that Ed Fagg Trust would repay the money represented by such checks to Mrs. Liston; that all the children understood the money represented by the checks would be received by Ed Fagg Trust and that Ed Fagg Trust would repay the money represented by such checks to Mrs. Liston, and the repayments of $10,000.00 and $6,000.00 would be received by Mrs. Liston.

■ The jury also found that the monies contributed to Mrs. Liston by the Central Cattle Company included interest or earnings occurring after August 2, 1960, on money deposited with the Spool Company. Even if it should be considered that the agreement entered into on August 2, 1960, was a gift or made all the property the separate property of Mrs. Liston that existed at that time, the interest and earnings occurring after August 2, 1960, would not be her separate property since Mr. Liston could not give her the interest and earnings before they accrued. Frame v. Frame, 120 Tex. 61, 36 S.W.2d 152; Chandler et al. v. Alamo Mfg. Co., Tex.Civ.App., 140 S.W. 2d 918.

■ As to the claim that the Ed Fagg Trust is not indebted on this obligation because the claims against the Trust are defeated by the two-year statute of limitations, we cannot agree with that contention. The instruments here involved clearly show upon the checks that they were made as a loan and the four-year statute of limitations apply. Hester & Wise v. Chinn, Tex.Civ.App., 162 S.W.2d 450; Naylor et al. v. Gutteridge et al., Tex.Civ.App., 430 S.W.2d 726. See also Starr et al. v. Ferguson, 140 Tex. 80, 166 S.W.2d 130; Trautmann Brothers Investment Corp. v. Del Mar Conservation District, Tex.Civ. App., 440 S.W.2d 314 (ref. n. r. e.); First National Bank in Canyon et al. v. Gamble, 134 Tex. 112, 132 S.W.2d 100. Where the checks provide that the payments are to apply on a loan, they are effective in tolling the statute of limitations.

■ The dealings between Mr. and Mrs. Liston as to their property has been in such a manner that it is difficult to distinguish between their separate property and their community since they have so commingled both types of funds beyond the ability to resegregate them, and since that has been done herein, the aggregate does not become separate but community. It is stated in Tarver v. Tarver, 394 S.W.2d 780 (Tex. Sup.) as follows: "When the evidence shows that separate and community property have been so commingled as to defy resegregation and identification, the burden is not discharged and the statutory presumption that the entire mass is community controls its disposition." That rule applies to the burden placed upon the one claiming the property is their separate property. See Rippy v. Rippy, Tex.Civ.App., 49 S.W. 2d 494 (writ ref'd); Hodge v. Ellis, 154 Tex. 341, 277 S.W.2d 900 at 907.

■ On June 9, 1967, Mrs. Liston transferred to the Jack D. Liston Trust No. II a large quantity of property which according to the findings of the jury as to the source of funds invested in this property, constituted community property. On that same date, Jack D. Liston Trust No. II mortgaged the same property to the First National Bank of Amarillo. It is the contention of appellants that the transfer from Mrs. Liston to Jack D. Liston Trust No. II is void, and that both the conveyances from her to Jack D. Liston Trust No. II and the mortgage or transfer from Jack D. Liston Trust No. II to the First National Bank of Amarillo were fraudulent as to appellants.

The jury found on sufficient evidence that the conveyances, assignments, releases and other transfers from Bonne W. Liston to Jack D. Liston Trust No. II in June, 1967, were given with the intent to delay, hinder and defraud Amarillo National Bank and Caprock Leasing Co. in the collection of their debt. The jury found on sufficient evidence that the Jack D. Liston Trust No. II knew the conveyances, re-

leases, assignments and other transfers were given by Bonne W. Liston to it with the intent to either delay, hinder or defraud the Amarillo National Bank and Caprock Leasing Co. in the collection of their debt. The jury found on sufficient evidence that the First National Bank of Amarillo, Texas, on the date of the conveyances, assignments, releases and transfers from Jack D. Liston Trust No. II to it, had a knowledge of facts or circumstances such as would have put an ordinary prudent person on inquiry, which by the use of proper diligence on its part, would have led to a knowledge that the conveyances, assignments, releases and transfers from Bonne W. Liston to Jack D. Liston Trust No. II in June, 1967, were given with intent to either delay, hinder or defraud the Amarillo National Bank and Caprock Leasing Co. in the collection of the debt owed to them by Jack D. Liston and Hallmark Academy, Inc.

On March 23, 1967, Mrs. Liston had borrowed $285,000.00 from the First National Bank of Amarillo made payable six months after date. The bank had never requested any security or collateral on that note and none had ever been given. On June 8 or 9, 1967, Mrs. Liston transferred certain property to Jack D. Liston Trust No. II, and Jack D. Liston Trust No. II mortgaged or transferred the property to the First National Bank of Amarillo on that same date, which mortgage was not requested by the bank but was done at the request of Mrs. Liston. Art. 3996, T.C.S. provides as follows:

"Every gift, conveyance, assignment, or transfer of, or charge upon, any estate real or personal, every suit commenced, or decree, judgment or execution suffered or obtained and every bond or other writing given with intent to delay, hinder or defraud creditors, purchasers, or other persons of or from what they are, or may be, lawfully entitled to, shall, as to such creditors, purchasers or other persons,

their representatives or assigns, be void. This article shall not affect the title of a purchaser, for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor."

Brown et al. v. Hart et al., Tex.Civ.App., 43 S.W.2d 274 (writ ref'd) ; Continental Credit Corporation v. Norman, Tex.Civ.App., 303 S.W.2d 449 and Flack et al. v. First National Bank of Dalhart, 148 Tex. 495, 226 S.W.2d 628, discuss notice to a lender which would defeat his priority. We have carefully read over the statement of facts and believe there is evidence justifying the findings of the jury on the question of notice to the First National Bank of Amarillo as to the intention of Mrs. Liston and the Jack D. Liston Trust No. II to delay, hinder and defraud the appellants in collection of their debt. We are of the opinion, and so hold, that the assignments made by Mrs. Liston to the Jack D. Liston Trust No. II, and the assignments made by the Jack D. Liston Trust No. II to the First National Bank of Amarillo are void and of no force and effect as to the judgments owned by the appellants above mentioned, and that the separate property of Mrs. Liston has become so commingled with the community property of Mr. and Mrs. Liston that it has become their community property subject to the debts of the community.

We have carefully considered all of the assignments of error presented by all parties herein and overrule all of them that are in conflict wtih the holdings herein. Judgment of the trial court is reversed and judgment here rendered in behalf of the appellants, Amarillo National Bank and Caprock Leasing Co., that they have a first and superior claim to all claims of the First National Bank of Amarillo, the Jack D. Liston Trust No. II, and Mr. and Mrs. Liston, and that appellants recover such amounts as to satisfy the judgments they may have heretofore obtained against Jack D. Liston and Hallmark Academy, Inc. out of any of the following: the $285,000.-00 indebtedness owed by the Ed Fagg Trust to the community estate of Jack D. and Bonne Liston and all the corporate stocks, notes, interest in any real estate and loans designated and set out in the transfer and assignments dated June 9, 1967, executed by Jack D. Liston Trust No. II to the First National Bank of Amarillo. Judgment of the trial court is reversed and rendered.

DENTON, Chief Justice.

I respectfully dissent.

The majority has held the "separation agreement" entered into by Jack D. Liston and Bonne Liston is null and void for the reason it does not meet the requirements of Art. 4624a, V.A.C.S. I am in agreement with the majority holding concerning the partition of community property by the husband and wife; however in my opinion the requirements of that statute are not applicable to this separation agreement entered into by the Listons. The separation agreement by the Listons was in contemplation of divorce and permanent separation and was not a partition of community property by the husband and wife while living together. This latter method of property division is controlled by Art. 4624a while in my opinion, the separation agreement here is not governed by the provisions of that article. The separation agreement under consideration here has been recognized as valid by the Texas courts since Rains v. Wheeler, 76 Tex. 390, 13 S.W. 324 (1890). It is well settled that where husband and wife have separated and have determined upon a separation and are in the act of executing it, a deed of separation, including partition of community property, will be upheld, provided the agreement has been entered into without coercion or undue influence, and the provisions are just and

equitable. Rains v. Wheeler, supra; Callicoatte v. Callicoatte (Tex.Civ.App.) 417 S.W.2d 618; Loston v. Loston (Tex.Civ. App.) 424 S.W.2d 316 (error dism'd); Simpson v. Simpson (Tex.Civ.App.) 387 S.W.2d 717; Rodriguez v. Rodriguez (Tex. Civ.App.) 233 S.W.2d 916; Corrigan v. Goss (Tex.Civ.App.) 160 S.W. 652 (writ ref'd); Couch v. Schwalbe, 51 Tex.Civ. App. 94, 111 S.W. 1046 (writ ref'd); Speckels v. Kneip (Tex.Civ.App.) 170 S.W. 2d 255 (writ ref'd).

The jury found: (23) the Listons were permanently separated on the date the agreement was executed; (24, 25) that Jack Liston did not sign the separation agreement as a result of duress or undue influence; (26) that the Listons did not intend by their subsequent reconciliation to cancel the separation agreement; and (27) that the Listons continually ratified and intended to carry out the agreement from its inception to the present time. It is my opinion there was sufficient evidence to support these findings.

There was also sufficient evidence to support further findings of the jury that: (28, 29, 30, 31) both the Amarillo National Bank and Caprock Leasing, before making the loan and lease to Hallmark Academy and Liston, had knowledge of facts upon the basis which a prudent banker or lessor would make further inquiries as to the status of the separate and community property of Jack and Bonne Liston; and that inquiries would have led to the discovery of the existence and terms of the instrument designated "Agreement in Contemplation of Divorce and Permanent Separation". I would therefore hold the separation agreement was effective as to these creditors.

The jury's findings that the conveyances, releases and transfers from Bonne Liston to the Jack D. Liston Trust No. II in June 1967 were given to hinder and delay the appellants in the collection of their debts against Jack D. Liston and Hallmark Academy are not material or decisive under this record. It is well settled that a conveyance of exempt property may not be attacked on the grounds it was made in fraud of creditors. Chandler v. Welborn, 156 Tex. 312, 294 S.W.2d 801; Sorenson v. City National Bank, 121 Tex. 478, 49 S.W. 2d 718. See also 20 Tex.Jur.2d 389, Sec. 86. The securities and notes conveyed and pledged by Bonne Liston, being her separate property, are exempt property and not subject to the attack made by appellants.

I would affirm the judgment of the trial court.

## ON MOTION FOR REHEARING

NORTHCUTT, Justice.

It has been called to our attention that our opinion herein was not clear as to the corporate stocks available to appellants in collecting their judgment against Jack D. Liston. Therefore, to clarify our opinion, we modify and amend the opinion heretofore rendered herein to provide that the judgment of the trial court is reversed and judgment here rendered on behalf of appellants, Amarillo National Bank and Caprock Leasing Company, that they have a first and superior claim to all claims of the First National Bank of Amarillo, the Jack D. Liston Trust No. II and Mr. and Mrs. Liston, and that appellants recover such amounts as to satisfy the judgments they may have heretofore obtained against Jack D. Liston and Hallmark Academy, Inc. out of the following: the $285,000.00 indebtedness owed by the Ed Fagg Trust to the community estate of Jack D. and Bonne Liston; all the corporate stocks, notes, interest in any real estate and loans designated and set out in the transfer and assignments dated August 9, 1967 executed by Jack D. Liston Trust No. II to the First National Bank of Amarillo, and the following corporate stocks of Jack D. and

Bonne Liston as follows: 125 shares of Creek Cattle Company stock; 810 shares of MM Cattle Company stock; 540 shares of Jaten Oil Company stock; 40 shares of Spool Oil Company stock; 10 shares of Spool Company stock; 270 shares of H & W Development Company stock; 2 shares of Globe News Publishing Company stock; and 1 share of Amarillo Club stock.

The appellees in their motion for rehearing, among other contentions, contended the court erred in holding the agreement dated August 2, 1960 was not binding on the creditors (appellants herein) because these appellants had constructive, if not actual, notice of the existence and terms of the agreement when they extended the credit to Jack Liston. That portion of Art. 4624a that was in effect when the August 2, 1960 instrument was drawn provided that such portion was not good or effectual against any creditor unless filed for record with the county clerk of the county or counties in which such property shall be situated. To partition community property to separate property, it must be done in a statutory manner. Art. 4624a was amended by the 60th Legislature to be effective January 1, 1968 and changed the act to provide that such partition or exchange would be void as against creditors without notice unless the subscribed written instrument evidencing it is acknowledged and filed for record. The amendment changed Art. 4624a that was effective on August 2, 1960 by adding creditors "without notice" but under Art. 4624a that was in effect on August 2, 1960, provided for the instrument to be good or effective against any creditor it had to be filed. Art. 4624a as effective on August 2, 1960, made no distinction between a creditor having notice and one that did not have notice, but unless it was filed for record, it was not effectual as against any creditor. The article was repealed by the 61st Legislature effective January 1, 1970.

The motions for rehearing are denied.

## ON SECOND MOTION FOR REHEARING

PER CURIAM.

Appellees have pointed out that this Court made no reference in its opinion to the assessment of costs in the trial court, and in view of the disposition of the case here, we agree that an allocation should be made as some eleven cases were consolidated for purposes of trial and appeal. The plaintiff, Amarillo National Bank, shall pay all costs incurred in the trial court, including attorney's fees as set by the trial court in its judgment of September 30, 1969, in all writ of garnishment proceedings instituted by the plaintiff bank. The plaintiff, Caprock Leasing Company, shall pay all costs incurred in the trial court, including attorney's fees as set by the trial court in its judgment of September 30, 1969, in all writ of garnishment proceedings instituted by plaintiff Caprock. In each case wherein both plaintiffs, bank and Caprock, joined in garnishment proceedings against the same garnishee or garnishees, the cost, including attorney's fees referred to hereinabove, will be charged 72% to plaintiff bank and 28% to plaintiff Caprock. All other costs in the trial court plus the cost of this appeal will be borne by defendants, Jack D. Liston and Bonne Whittenburg Liston, jointly and severally.

The second motion for rehearing is granted in part and overruled in part.

REYNOLDS, J., not participating.