# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00614-CV

**Daniel Naeter Calder, Appellant**

**v.**

**Brooke Ashley Calder, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
### NO. D-1-FM-09-001757, HONORABLE RHONDA HURLEY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Daniel Naeter Calder appeals from the trial court's final decree of divorce dissolving the marriage between him and appellee Brooke Ashley Calder. In three issues, Daniel challenges the district court's judgment confirming that a Chihuahua named Clementine is Brooke's separate property. We will affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Daniel and Brooke were married on June 10, 2006, and lived together as husband and wife for nearly three years. After the couple separated in February of 2009, Daniel filed for divorce. The only contested issue during the divorce proceedings concerned ownership of Clementine. The parties acknowledged that Clementine was acquired before the marriage and was, therefore, separate property, but joined issue over whose funds were used to purchase her.

The trial court held a bench trial at which Daniel and Brooke were the only witnesses. Daniel testified that in January of 2006, several months before the marriage, he began managing Brooke's finances and depositing her paychecks into his personal bank account. At that time, Brooke was a student living in College Station, while Daniel was living and working in Houston. In April, Brooke moved to Houston and began living in Daniel's apartment. She continued giving her paychecks to Daniel to deposit in his account, and he paid all of their living expenses.

Daniel explained that, initially, he would deposit Brooke's checks into his account and then immediately give her cash back. When she moved to Houston, he believed that there was no longer a need for him to take the checks, deposit them, and give her money back right away, so instead he simply deposited her checks and gave her money as she needed it. Daniel stated that his parents also made deposits into his account for the couple's wedding and moving expenses.

According to Daniel, Clementine was purchased on May 21, 2006, after he and Brooke decided that they wanted a Chihuahua and located a breeder named Debbie Schrenk. Through a series of e-mails, which are included in the record, Schrenk agreed to sell Clementine for $500, with a deposit of $100 up front. Daniel stated that although Brooke was the only one who was in e-mail contact with Schrenk, he and Brooke had agreed together to buy the dog and "there was never any discussion" that the dog would be purchased by or for Brooke. On May 15, 2006, Daniel wrote a check for the deposit, which was drawn on his personal bank account.

On cross-examination, Daniel conceded that, a few days before Clementine was purchased, Brooke made two deposits into his account of $512 and $436, respectively, which totaled $948. Around the same time, he withdrew $600 in cash, $400 of which was paid to Schrenk. Asked

2

why the money withdrawn from the account to pay for the dog could not have been Brooke's money, Daniel responded, "Because we had never discussed it that it was even her money. . . . We didn't discuss it beforehand that that money was coming out from her money to pay for the dog." He continued:

> The same claim [that the money used to buy Clementine came from Brooke] could be made for my parents because they deposited that $743 on May 15th as well.

Q. So you get to decide what money is whose when it's coming out[?]

A. She did have me manage her money.

During her testimony, Brooke disputed Daniel's claim that there was never any discussion about whose dog it would be. Brooke testified that, on the contrary, she had asked Daniel if she could get a dog to keep her company because she worked from home and Daniel traveled frequently for his job. She said that he had initially resisted because he is allergic to dogs, but that she eventually convinced him to let her get a Chihuahua after researching the breed and learning that Chihuahuas are hypoallergenic. Daniel's approval, however, was conditioned on Brooke agreeing to pay for the dog herself; Brooke testified, "He told me that I could only get Clementine if I paid for her, if the money came from my paycheck." Brooke further testified that she believed the money used to pay for Clementine was hers, because that was what Daniel had told her, and that once Clementine was purchased, she alone took care of the dog and took her to veterinary appointments. She also contradicted Daniel's testimony about how much money she had deposited into his account

3

during the month of May. According to Brooke, the aforementioned $743 deposit was actually one of her paychecks and was not, as Daniel had testified, money from his parents for the wedding.

After hearing testimony from both parties, the trial court determined that neither party had conclusively demonstrated whose funds had been used to purchase Clementine, and, based on the circumstantial evidence presented at trial, she would award the dog to Brooke. Accordingly, the final decree of divorce confirmed Clementine the Chihuahua to be Brooke's separate property. Daniel now appeals, arguing in three issues that (1) the trial court abused its discretion by divesting him of his separate property (2) without requiring Brooke to provide legally sufficient evidence tracing the funds used to purchase Clementine back to her separate estate, and that (3) the trial court erred in finding that the funds deposited by Brooke into Daniel's account were held for her benefit and were used to purchase Clementine.

## DISCUSSION

It is undisputed that Clementine was purchased before the marriage and is therefore separate, not community, property. Separate property consists of property owned or claimed by the spouse before marriage or acquired during marriage by gift, devise, or descent. Tex. Fam. Code Ann. § 3.001(1), (2) (West 2006); *Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex. 2001). The parties disagree only about *whose* separate property she is. This disagreement is based on whose money was used to purchase her, a dispute resulting from the commingling of their separate funds in Daniel's bank account prior to the marriage. On appeal, Daniel asserts in his third issue that no evidence supports the trial court's finding that the funds Brooke deposited into Daniel's account were held there for her benefit, in essence challenging the legal sufficiency of the evidence supporting the trial

4

court's finding that Brooke's separate funds were used to buy the dog. Contrary to Daniel's assertion on appeal, both parties testified that Daniel deposited Brooke's paychecks into his account and that he either immediately withdrew the money for her or held it in his account until she requested it. There is also no dispute that Brooke deposited at least $948 into his account several days before Clementine was purchased. Brooke further testified that Daniel agreed to let her buy a dog only if she used her own money to pay for it.

We agree with the trial court that the only evidence presented to clarify the source of funds used to purchase Clementine was the parties' testimony. Although Daniel's bank records were in evidence, they do not indicate the source of the deposits made, and copies of Brooke's paychecks were not offered or admitted at trial. When, as here, both parties claim an item as their separate property and the disputed fact issue turns on the credibility of the witnesses and weight to be given their testimony, we defer to the trial court's resolution of evidentiary conflicts. *Ratliff v. King*, No. 03-08-00424-CV, 2009 WL 2837706, at *5 (Tex. App.—Austin Aug. 31, 2009, no pet.) (mem. op.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 819-22 (Tex. 2005)). Giving due deference to the trial court's credibility and weight determinations, we conclude that the evidence was legally sufficient to support the trial court's judgment. We overrule Daniel's third issue.

Daniel asserts by his first issue that the fact the money used to purchase Clementine came from his bank account is dispositive of the ownership question. Relatedly, he argues in his second issue that Brooke failed to meet her burden of tracing the funds on deposit in his account to her separate funds to rebut the presumption that the funds in his account, prior to marriage, were his own.

5

In support of his assertion that the holder of record of an account is the owner of the funds in that account, Daniel cites a repealed statute formerly providing that the funds on deposit in any bank shall be presumed to be the separate property of the party named as the holder of the account. *See Amarillo Nat'l Bank v. Liston*, 464 S.W.2d 395, 406 (Tex. Civ. App.—Amarillo 1970, writ ref'd n.r.e.) (quoting Tex. Civ. Stat. Ann. art. 4622 (1925), *repealed by* Act of May 14, 1969, 61st Leg., R.S., ch. 888, § 6, 1969 Tex. Gen. Laws 2707, 2733). This presumption no longer exists in Texas law, but even if it did, the testimony presented at trial is sufficient to rebut it. Nor is Daniel correct that Brooke bore the burden of tracing the property she claimed to be her separate property in order to rebut the community presumption; the community presumption is inapposite here, as the parties were not married at the time Clementine was purchased. *Cf. Boyd v. Boyd*, 131 S.W.3d 605, 612 (Tex. App.—Fort Worth 2004, no pet.) (stating general rule that, without any tracing of funds, mere testimony that property was purchased with separate funds is insufficient to rebut community presumption applied to property acquired during marriage). We overrule Daniel's first and second issues.

## CONCLUSION

Having overruled Daniel's issues on appeal, we affirm the judgment of the trial court.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed:   August 25, 2010